```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
_____
                                    :
UNITED STATES OF AMERICA            :
                                    :   Crim. No. 06-916 (NLH)
     v.                             :
                                    :
DARRYL PIERCE                       :   OPINION
               Defendant            :
_____:
```

**APPEARANCES:**

FEDERAL PUBLIC DEFENDER'S OFFICE
By: Julie A. McGrain, Assistant Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, New Jersey 08102
   *On behalf of Defendant Darryl Pierce*

OFFICE OF THE UNITED STATES ATTORNEY
By: Diana Vondra Carrig, Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101
   *On behalf of the United States of America*

**HILLMAN**, **United States District Judge**

Before the Court is Defendant Darryl Pierce's Emergency Motion for Reduction of Sentence [Dkt. No. 29] pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant is currently serving a 16-year sentence from the District of New Jersey at Federal Correctional Institution ("FCI") Fairton, a medium-security prison in Fairfield Township, New Jersey.

In the instant motion, Defendant seeks immediate release to home confinement on the basis of a number of medical conditions – sickle cell trait, glaucoma, osteoarthritis, enlarged prostate

- which he contends either individually or in combination put him at a heightened risk for complications if he contracts COVID-19.  The Government opposes Defendant's motion, arguing that Defendant has demonstrated neither extraordinary circumstances warranting his release, nor that he merits release under the factors set forth in 18 U.S.C. § 3553(a).  The Government also asserts that the Federal Bureau of Prisons ("BOP") has taken significant steps to protect the health of inmates in its custody, including those housed at FCI Fairton.

For the reasons stated below, Defendant's motion will be denied.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On January 28, 2010, pursuant to a plea agreement, Defendant pleaded guilty to one count of a three-count Indictment – namely, knowingly possessing a firearm after having been convicted of three crimes in Pennsylvania courts, each punishable by imprisonment for a term exceeding one year and each constituting a violent felony or serious drug offense or both – resulting from his May 12, 2006 arrest in Atlantic City, New Jersey for fleeing police officers and running through Bally's Casino with a loaded .45 caliber semiautomatic pistol.

On November 15, 2007, this Court sentenced Defendant to 192 months' total imprisonment.

Defendant first submitted a request for compassionate release to the Warden of FCI Fairton on July 13, 2020.  At this time, he has received no response to his request.  On August 11, 2020, Defendant filed a letter motion through counsel, seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Defendant alleges that he suffers from a number of medical conditions, including sickle cell trait, glaucoma, osteoarthritis, and enlarged prostate, any of which alone or in combination make him particularly vulnerable to becoming seriously ill from COVID-19, and that he is more likely to contract COVID-19 while incarcerated at FCI Fairton.

II.   **LEGAL STANDARD**

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. April 24, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ('BOP') to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. April 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden

of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(c)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III. DISCUSSION

As the nation continues to grapple with the COVID-19 pandemic, the Court considers Defendant's Motion and its underlying concerns with seriousness.  However, as the United States Court of Appeals for the Third Circuit has articulated, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant alleges, and the Government does not dispute, that Defendant has satisfied the exhaustion requirement by submitting a request for compassionate release to the FCI Fairton administration and receiving no response to that request.  Therefore, the Court focuses on the second step of the analysis: whether extraordinary and compelling reasons exist to justify compassionate release.

Defendant contends that "extraordinary and compelling reasons" exist to justify compassionate release based on Defendant's various aforementioned chronic health conditions, which allegedly put him at risk for severe illness.  The Government responds by noting that the CDC has not recognized any of Defendant's listed conditions as a "high risk" condition, nor even as conditions that "might" place one at an increased risk.  The Government also asserts that Defendant is receiving treatment for various conditions and that his ability to provide self-care is "not substantially diminish[ed]" by his imprisonment.

Although the Court is sympathetic to Defendant's concerns about becoming seriously ill were he to contract COVID-19, his medical history and the CDC guidelines do not seem to suggest

that his conditions create an "extraordinary and compelling" risk.[1]

Next, Defendant argues that prison conditions at FCI Fairton, and in BOP custody generally, put Defendant at heightened risk of contracting COVID-19.  Defendant does not allege specific shortcomings at FCI Fairton, but cites an August 2020 BOP update indicating that the rate of infection within BOP facilities was higher than that in the general population.

The Government argues that BOP has undertaken a number of interventions, in accordance with its Coronavirus (COVID-19) Action Plan (the "Action Plan"), to minimize risk of virus transmission into and within BOP facilities.  These steps include imposing restrictions on visitation, transfers, and non-essential activities; increasing medical screening of inmates and staff; and implementing changes in facility maintenance and sanitation.  These steps appear to have had some effectiveness.  According to the BOP website, as of the date of this Opinion FCI Fairton has only 8 confirmed active cases, all among staff.[2]

---

[1] Defendant's most serious condition appears to be a heightened risk for developing sickle cell disease.  But as the government notes and the defendant concedes, sickle cell trait is to be distinguished from sickle cell disease.  While sickle cell disease would make defendant more at risk if he were to become ill from COVID-19, and the trait makes him more susceptible to developing sickle cell disease, he does not yet have the disease.

[2] See https://www.bop.gov/coronavirus/ (last visited November 19, 2020).

The Court is mindful that the general conditions of incarceration – confinement in relatively small enclosed spaces, use of common bathrooms, rationed access to hygienic products and healthcare – make prisons potential "hot spots" for virus transmission.  However, given the markedly restrained progression of the virus within FCI Fairton, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact.

Under the circumstances, granting Defendant's request to be released to reside with a friend in an unspecified location in North Carolina could place him at greater risk of contracting COVID-19 than the risk he currently faces.  As of November 19, 2020, North Carolina had 325,158 confirmed cases and 4,936 deaths and "is experiencing high levels of community transmission of COVID-19 statewide."[3]

The Court is sympathetic to Defendant's concerns for his health while in custody.  Nevertheless, Defendant has failed to demonstrate that such concerns provide "extraordinary and compelling" reasons justifying his compassionate release.

---

[3] North Carolina Department of Health and Human Services, NCDHHS COVID-19 RESPONSE, "COVID-19 North Carolina Dashboard", available at https://covid19.ncdhhs.gov/dashboard/ (accessed on November 19, 2020).

In the alternative, if the Court were to decide that Defendant had demonstrated "extraordinary and compelling" reasons for release, it would also have to weigh the sentencing factors set forth in 18 U.S.C. § 3553(a), such as the nature and circumstances of the crime, Defendant's background and characteristics, and the need for specific and general deterrence. See Pabon, 2020 WL 2112265, at *2.

In this case, several factors weigh heavily against release. Defendant's crime of conviction evinced a lack of concern for the safety of the general public. Defendant is a career criminal, committing serious crimes into his late 40s. His history is replete with violations while on probation or supervised release. His prison disciplinary record is poor. These are all factors that should give any court pause in considering early release. The Court thus finds in the alternative that the sentencing factors in 18 U.S.C. § 3553(a) weigh against Defendant's release.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion for Reduction of Sentence [Dkt. No. 29] pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be denied. An Order consistent with this Opinion shall issue on this date.

DATED: November 20, 2020             /s Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.